■ In the Matter of the Adoption of JASON ZZ. ELIZABETH ZZ, Appellant; BRUCE A. et al., Respondents.—Appeal from an order of the Surrogate's Court of Franklin County, entered June 5, 1979, which denied petitioner's application to revoke her consent to the adoption of her son. The petitioner determined in July of 1978 that her son's best interests required a more stable environment for him and that she should seek foster parents. On July 9, 1978 she had a conference with the respondents and it was agreed that she would surrender the child to them for adoption. However, the parties also agreed that her surrender was not absolute since petitioner was to have continual visitation rights following adoption.* The parties discussed legal fees and petitioner offered to pay all or part of such fees. The respondents insist that at the time of petitioner's offer in regard to legal fees they told her they would pay such fees because it was their responsibility. On July 11 or July 12, 1978, one of the respondents did in fact retain the respondents' present counsel, James E. La Pan, and advised the petitioner that counsel would prepare the papers and handle the adoption. The petitioner supplied requested information to the respondents regarding herself, her son, and her son's paternity. Further, petitioner agreed to meet with the respondents and counsel at counsel's office on the morning of July 13, 1978. At that meeting, petitioner supplied counsel with information and generally assisted and/or co-operated in the completion of papers necessary for the presentation of the proceeding at a term of the Surrogate's Court of Franklin County. At the direction of counsel, the petitioner and the respondents proceeded to the courthouse where they waited for some time until the Surrogate reached their matter. It is conceded by the petitioner that during the wait she read the consent papers which she signed and that the Surrogate asked her if her consent was voluntary and if she understood the papers to which she replied affirmatively. The petition does not dispute that she understood from the papers and the Surrogate that her son's surname would be changed to that of the respondents. The respondents testified that soon after July 13, 1978 they advised petitioner that they no longer intended to permit visitation. At that point the petitioner contacted counsel who advised her that he was not her counsel. Following another contact with counsel in September, 1978 when he told her to get an attorney, the petitioner promptly re-

---

* It should be noted that there is testimony that the continual visitation was subject to revocation by the respondents if they should deem such visitation not in the best interests of the child.

tained separate counsel and commenced this proceeding on September 14, 1978. The Surrogate held hearings directed toward the validity of the consent to adoption and to the best interests of the infant. A review of the record discloses ample justification for the finding that the best interests of the child would be furthered by a denial of the application for a revocation of consent and we find no merit in that aspect of petitioner's appeal. It is further noted that the court held an *in camera* conference with the child, Jason. As to the issues raised relating to the validity of the consent to adoption and the proceedings held in Surrogate's Court on July 13, 1978, the petitioner raises such issues as visitation rights of the child; being misled by an attorney; and a misunderstanding as to the revocability of the consent. Such issues are ones of credibility and, in a detailed and well reasoned decision dated May 16, 1979, the Surrogate made the following findings: "Petitioner has argued that the surrender was invalid by reason of her lack of intent at the time of the signing. This argument was dealt with prior to the fact finding hearing on the best interests of the child. It was found that the surrender was valid though not irrevocable. By petitioner's statement under oath she established the fact that a rather detailed inquiry was had by the Court (though not on the record) prior to her execution of the surrender document. This coupled with the discussions had with Mr. LaPan and the adoptive parents prior to coming to Court and in addition petitioner's prior experience in placing her first child for adoption and petitioner's high intelligence leads to the conclusion that the surrender was a knowing one. This is so notwithstanding petitioner's testimony to the contrary which the Court finds to be without credibility on that issue." And further: "It is the finding of this Court that Jason's best interests will be served by adoption by the adoptive parents. For this reason, the attempted revocation by petitioner of the consent to adoption is deemed to have no force or effect. (D.R.L. section 115-b, subd. 3 [d] [iv])." The respondents' counsel has attached to his brief upon this appeal an affidavit without leave of this court and which was not in evidence before the Family Court. Such procedure is not condoned and the affidavit has not in any way been relied upon in reaching the decision in this case. Order affirmed, without costs. Mahoney, P. J., Greenblott, Main, Mikoll and Herlihy, JJ., concur.

 